UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW BECKER,<br><br>   Plaintiff,<br><br> v.<br><br>LISI, LLC, et al.,<br><br>   Defendants. | Case No. 21-cv-03295-JST<br><br>**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: ECF No. 38 |

  Before the Court is Plaintiff Matthew Becker's motion for preliminary approval of a class action settlement. ECF No. 38. The Court will deny the motion.

## I. BACKGROUND

###   A. Parties and Claims

  This action arises out of the alleged failure of LISI, LLC and AmWins Group, Inc. ("Defendants) to adequately secure and safeguard their customers' personally identifiable information ("PII").

  Defendant LISI, LLC partners with insurance carriers to market and distribute their products to insurance brokers and agencies. ECF No. 38 at 7. Defendant AmWins Group, Inc. is the parent company of LISI. *Id.* Becker enrolled in a life and disability insurance plan with MetLife in or around March 2018. *Id.* In July 2020, Becker received a Notice of Data Breach from LISI, stating that an employee's email account was hacked by an unauthorized third party who obtained insureds' PII and other account information. *Id.* According to the Notice of Data Breach, emails containing customer PII were forwarded from a LISI email account to an unauthorized third party. *Id.* An investigation indicated that the forwarded emails contained Becker's and class members' names, Social Security numbers, dates of birth, and insurance

information.  *Id.*  Becker alleges that Defendants took inadequate steps to protect class members' PII.  ECF No. 1 ¶ 66.  Becker alleges that this breach has put himself and the other class members at immediate and continued risk of harm from fraud and identity theft.  ECF No. 38 at 7-8. Among other harms, Becker asserts that fraudulent accounts were opened in his name using his Social Security number, and that he was required to purchase a credit and identity theft monitoring product from Norton's LifeLock that he would not otherwise have needed to purchase.  ECF No. 1 ¶¶ 68, 70-76.

In his complaint, ECF No. 1, Becker asserts causes of action for: (1) negligence, (2) breach of confidence, (3) injunctive and declaratory relief, and (4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § § 17200 et seq.

### B.  Settlement Agreement

The Settlement Agreement defines the settlement class, describes the parties' agreed upon exchange of consideration, and proposes a plan for sending notice to and administrating claims for the settlement class members.  ECF No. 38-1.  Under the Settlement Agreement, the settlement class is defined as "all persons whose PII was compromised as a result of the Data Breach announced by Defendants in July of 2020."  ECF No. 38 at 9.  As part of the Settlement, all class members, even if they have not experienced any damage from the breach, are offered 24 months of credit monitoring services provided by Experian's IdentityWorks in addition to the twelve months offered with the Notice of the Data Breach.  *Id*.  These monitoring services retail for $9.95 per month and provide more than $117,250.00 in value for the class.  *Id*.  In addition to the credit monitoring services, Defendants will make payments to class members who file a valid claim for out-of-pocket losses and lost time spent researching and remedying issues related to the breach, subject to a cap of $1,500 per class member and an aggregate cap of $200,000.  *Id*.  Class members are also eligible to receive compensation for up to three hours of lost time spent dealing with the breach at the rate of $25 per hour.  *Id*.

Under the Settlement Agreement, attorney's fees and expenses will be capped at $75,000. *Id*. at 10.  Also, Defendants have agreed not to oppose a service award of $2,000 to Becker.  *Id*. The Settlement Agreement seeks to appoint Angeion Group as the Claims Administrator, who will

1  use both a summary notice and a long-form notice to disseminate notice of the Settlement
2  Agreement to the class members. *Id*. at 11. The notice program includes: (1) Notice of Settlement
3  and Claim Form mailed through the USPS; (2) creation of a Settlement website; and (3) a toll-free
4  telephone number through which class members can obtain additional information about the
5  settlement. *Id*.

6  Class members will have sixty days from the commencement of the notice mailing to
7  submit their claim form, either by mail or online. *Id*. at 12. The Claims Administrator will assess
8  the validity of the claims and request additional information if needed. *Id*. Claims will be paid
9  within twenty days after the effective date. *Id*. Class members who wish to opt out will have sixty
10 days after the commencement of the Notice to submit written notice to the designated post office
11 box established by the Claims Administrator. *Id*. Similarly, class members who want to object to
12 the terms of the settlement must send their written objection directly to the Court within sixty days
13 from the date on which Notice commences. *Id*. at 13.

## II.    JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## III.   LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Rule 23 requires courts to employ a two-step process in evaluating a class action settlement. First, the parties must show "that the court will likely be able to . . . (i) approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). In other words, a court must make a preliminary determination that the settlement "is fair, reasonable, and adequate" when considering the factors set out in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2). The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)); *see also* Manual for Complex Litigation (Fourth) § 21.632 (2004) (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must

3

direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing"). "'The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge.'" *City of Seattle*, 955 F.2d at 1276 (quoting *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

If no class has yet been certified, a court must likewise make a preliminary finding that it "will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). If the court makes these preliminary findings, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id*. Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Within this framework, preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (quoting *Schwartz*, 157 F. Supp. 2d at 570 n.12). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

4

1   *Id.* at 1026 (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).  The

2   proposed settlement must be "taken as a whole, rather than the individual component parts," in the

3   examination for overall fairness.  *Id*.  Courts do not have the ability to "'delete, modify, or

4   substitute certain provisions'"; the settlement "must stand or fall in its entirety."  *Id*.  (quoting

5   *Officers for Justice*, 688 F.2d at 630).

## IV. DISCUSSION

Becker moves (1) for preliminary approval of the Settlement Agreement; (2) for approval of the form, manner, and content of the notice for the proposed settlement to the class; (3) for appointment of Angeion Group as the Claims Administrator; (4) for appointment of Jean S. Martin, Francesca Kester, Marie N. Appel, and Michael F. Ram of Morgan & Morgan, and Micah S. Adkins of The Adkins Firm as proposed class counsel; and (5) for the scheduling of the final fairness hearing.  ECF No. 38 at 5.

While some of the above factors lend support for finding that the Settlement Agreement falls within the range of possible approval, there are a number of obvious deficiencies that prevent the Court from granting preliminary approval at this time.

### A. Range of Recovery

"This Court 'has more than once denied motions for approval where the plaintiffs provided no information about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims.'"  *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 969 (N.D. Cal. 2019) (quoting *K.H. v. Sec'y of Dep't of Homeland Sec.*, No. 15-cv-02740-JST, 2018 WL 3585142, at *5 (N.D. Cal. July 26, 2018)).  "This is because 'any fraction has a denominator, and without knowing what it is the Court cannot balance plaintiffs' expected recovery against the proposed settlement amount.'"  *Id.* at 970 (quoting *K.H.*, 2018 WL 3585142, at *5).

Here, Plaintiff provides no information as to the value of the class's claims.  Plaintiff's counsel says only the following:

> While in data breach cases it is unknown exactly what damages have been experienced by class members, Proposed Class Counsel has vast experience in these cases and have a clear understanding of the

5

> types and amounts of damages potentially faced. Based upon this experience, Proposed Class Counsel was able to ascertain the fair value of the Settlement Class claims prior to settlement.

ECF No. 38 at 20 (citation omitted). This boilerplate language does not provide the Court with sufficient information to evaluate the reasonableness of the class's recovery. "Balancing the class's potential recovery against the amount offered in settlement is 'perhaps the most important factor to consider' in preliminary approval, not a hollow exercise in which the Court blindly accepts the parties' unsupported assertions." *Haralson*, 383 F. Supp. 3d at 970 (internal citation omitted) (quoting *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016)). "'Plaintiffs seeking preliminary approval should show their work by explaining the relative value of their claims in significant detail.'" *Id.* (quoting *Eddings v. DS Servs. of Am., Inc.*, No. 15-cv-02576-VC, 2016 WL 3390477, at *1 (N.D. Cal. May 20, 2016)).

Similarly, the Plaintiffs have failed to supply "'enough information to evaluate the strengths and weaknesses of [their] case.'" *Haralson*, 383 F. Supp. 3d at 970 (quoting *Eddings*, 2016 WL 3390477, at *1). Instead, Plaintiffs provide only generic statements about the risks inherent to a class action, such as "the risk of uncertainty at trial and on appeal," ECF No. 38 at 6, and "the significant expense and risks faced with the continued prosecution of the claims through class certification, trial and any appeals," *id.* at 13. Courts, including this one, have required more. *Haralson*, 383 F. Supp. 3d at 970; *see K.H.*, 2018 WL 3585142, at *5 (denying preliminary approval where "[p]laintiffs have not even attempted to provide 'hypothetical scenarios' that could produce various expected recoverable damages to measure against the proposed settlement amount" (citation omitted) (quoting *Stovall-Gusman v. W.W. Grainger, Inc.*, No. 13-cv-02540-JD, 2014 WL 5492729, at *2 (N.D. Cal. Oct. 30, 2014)); *Hunt v. VEP Healthcare, Inc.*, No. 16-CV-04790-VC, 2017 WL 3608297, at *1 (N.D. Cal. Aug. 22, 2017) ("The motion for preliminary approval makes abstract gestures to the uncertainties of litigation, rather than offering a careful analysis of the claims and the strength or weakness of any potential defenses."); *Eddings*, 2016 WL 3390477, at *1 ("The plaintiffs list legal issues that this case might present and positions that the defendants might take, but they don't analyze those issues or evaluate the strength or weakness

of defendants' positions. A party moving for preliminary approval should cite case law and apply it to explain why each claim or defense in the case is more or less likely to prove meritorious.").

Any future motion for preliminary approval should articulate an estimated maximum value of Plaintiff's claims and explain the basis for calculating this value, and should more clearly identify the legal risks to Plaintiff of moving forward without a settlement.

### B. Attorney's Fees

Because the Settlement was reached prior to class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement," and the Court must examine the agreement with "an even higher level of scrutiny for evidence of collusion or other conflicts of interest." *In re Bluetooth*, 654 F.3d at 946. Signs of collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing provision"; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund. *Id.* at 947. If "multiple indicia of possible implicit collusion" are present, a district court has a "special 'obligation to assure itself that the fees awarded in the agreement were not unreasonably high.'" *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

Both the second and third *Bluetooth* concerns are present in this case. Under the terms of the Settlement Agreement, Defendants agree not to oppose Plaintiff's counsel's motion for attorney's fees and costs, provided that the request does not exceed $75,000. ECF No. 38-1 ¶ 10.2. The fee award will be paid directly by Defendants and will not alter the amount of any other payment specified in the Settlement Agreement. *Id.* Although the fact is not explicitly stated in the Settlement Agreement, if the Court awards less than $75,000 in fees, Defendants keep the amount of the difference, and those funds are not distributed to the class. Especially in light of the lack of information about whether the proposed settlement represents a good result for the class, "[t]he Court concludes that this arrangement, which potentially denies the class money that Defendants were willing to pay in settlement – with no apparent countervailing benefit to the class – renders the Settlement [Agreement] unreasonable." *Rollins v. Dignity Health*, No. 13-cv-01450-JST, 2019 WL 8165915, at *7 (N.D. Cal. Oct. 28, 2019).

7

### C. The Motion Does Not Comply With The Procedural Guidelines for Class Action Settlements

The present motion also does not comply with the Northern District of California's Procedural Guidelines for Class Action Settlements ("Guidelines").[1]  "A movant's failure to address the issues discussed in the Guidelines is a proper ground for denying a motion for preliminary or final approval of a class action settlement." *Bakhtiar v. Info. Res., Inc.*, No. 17-cv-04559-JST, 2020 WL 11421997, at *8 (N.D. Cal. Jan. 30, 2020).

#### 1. There is no explanation for why there are differences between the released claims and those brought under the operative complaint

Section 1(c) of the Guidelines requires an explanation of "any differences between the claims to be released and the claims in the operative complaint and an explanation as to why the differences are appropriate in the instant case."

The released claims here, in addition to including claims arising out of the allegations in the operative complaint, are outlined in paragraph nine of the Settlement Agreement.  ECF No. 38-1 at 26-28.  However, the motion fails to address why these differences between the released claims and the ones brought under the complaint are appropriate.

#### 2. The motion fails to provide the potential class recovery if plaintiffs had fully prevailed on each of their claims

Section 1(e) of the Guidelines requires an explanation of "[t]he anticipated class recovery under the settlement, the potential class recovery if plaintiffs had fully prevailed on each of their claims, and an explanation of the factors bearing on the amount of the compromise."  As set forth above, the present motion fails to include the information required by this guideline.

#### 3. Details of the settlement administration, administrative costs, and attorney's fees are not adequately explained

Section 2 of the Guidelines provides that, in a motion for preliminary approval, the parties should identify the settlement administration process, how many settlement administrators submitted proposals, and what methods of notice and claims payments were proposed.  The present motion fails to provide any of this information.

---

[1] The Guidelines are accessible at https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

The Guidelines also ask the parties to describe the anticipated administrative costs and the reasonableness of those costs in relation to the value of the settlement. Plaintiff's motion does not provide that information.

### 4. The motion fails to adequately provide information about past distributions

Section 11(a) and 11(b) of the Guidelines require that lead class counsel provide information about one or more prior past comparable settlements. Plaintiff provides some of the information required by Section 11(a) for certain past settlements, but does not provide the following information: the total number class members to whom notice was sent; the methods of notice; the number and percentage of claim forms submitted; the amounts distributed to each *cy pres* recipient; the administrative costs; the attorney's fees and costs; and the total exposure if the plaintiffs had prevailed on every claim.

For settlements where class members are entitled to non-monetary relief, such as this one, Section 11(b) of the Guidelines require Plaintiff to provide, as to past comparable settlements, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests. Plaintiff provides no information on that topic.

### D. Other Deficiencies

Rule 23(e)(2)(C)(iv) asks the Court to consider any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(iv). Becker fails to state whether this subsection of Rule 23 applies to the current action. Rule 23(e)(2)(D) asks whether the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). While it is likely that the Settlement Agreement meets the requirement of Rule 23(e)(2)(D), the present motion fails to explicitly address this issue. *See Mauss v. NuVasive, Inc.*, No. 13-cv-2005-JM (JLB), 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) (holding that a plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable).

/ / /

/ / /

**CONCLUSION**

For the reasons set forth above, the Court denies Becker's motion for preliminary approval of the Settlement Agreement. A revised motion for preliminary approval is due October 28, 2022.

**IT IS SO ORDERED.**

Dated: September 1, 2022



JON S. TIGAR
United States District Judge